proceedings in this case expressed it's sympathy to Mr. Saleh's predicament of having been deported under a law which the courts interpreting it at the time believed was lawful, and then Mr. Saleh having entered the United States in 2002 and essentially starting a new life getting married, going to the INS giving his finger prints and being told he is good to go out of the country and re-enter.

Mr. Saleh, Your Honor has lost everything he believed was going to help him make a perfect life for him. His wife, his child, whom he has not seen since he was born as his wife never visited with him at Jail and did not even send him pictures of this son although Mr. Saleh requested them on many occasions. Mr. Saleh is very remorseful for the period of his life that has cost him his future, and he is apologetic to the Government of the United States for what he has done.

Mr. Saleh, when he stands before this Honorable Court for sentencing will have been incarcerated for over 15 months. We respectfully submit that this time is sufficient punishment for the instant offense. Mr. Saleh has lost it all, his wife his son, whom he does not know how he is going to contact or if he will ever be able to be a part of his life. Mr. Saleh is going to be deported to Yemen again, where he has no family or friends and a country which is alien to him.

Your Honor we respectfully request that the Court sentence Mr. Saleh to time served so he can be moved into immigration to be deported which may take a further two or three months.

Thank you for your indulgence in this matter.

Respectfully submitted,

_____
**Uzmah Saghir, Esq**.

CC: Gurbir Grewal, AUSA
     Shannon T. Smith, U.S. Probation Officer

together. However, in March of 2004 Mr. Saleh retuned to Yemen and when he tried to re-enter on August 28, 2004 his life took a different turn, a turn that has changed Mr. Saleh life forever, the hopes the dreams he had for himself and his family have all gone. He now sits alone in a prison cell wondering what happened to his perfect world.

Having made an application for a renewal of his Residence card, being approved and fingerprinted and after being assured by the INS that he is good to travel on his expired card, Mr. Saleh left for Yemen, upon his return he was arrested for having been deported previously and not seeking the Attorney General's permission before attempting enter.

Your Honor, in interest of brevity the facts of the case have been kept to the minimum as all the facts have previously been addressed in the motion to dismiss. Your Honor did not dismiss the indictment as Your Honor is of the opinion that although Mr. Saleh had been deported illegally pursuant to the recent rulings of the Supreme Court, his deportation at the time was lawful as the courts at the time were conducting themselves in a manner they believed was lawful at the time. All this Honorable Court has for Mr. Saleh is sympathy.

Your Honor, Mr. Saleh has not been involved in any criminal activity since his release from custody in 1998 when he was deported. He went to Yemen and tried to make a living going odd jobs. He lawfully entered the Untied States in 2002 he again worked odd jobs to keep himself and his wife. One can argue that had Mr. Saleh not been wrongfully deported in 1998 his life would have been different, he would have been a law abiding member of the community. Counsel did not know him ten years ago when he had his "run ins" with the law, however, Counsel has known Mr. Saleh for the 15 months or so he has been incarcerated. He is a perfect gentleman, very polite and courteous and Counsel can say this for sure, if he was permitted to be a part of the community here is in the United States, which he sees as his home, he would be a valuable asset to society.

Mr. Saleh's current offense level is 21 in a Criminal History category III with a guideline range of 46-57 months.

Your Honor, as the Court is well aware after the Supreme Court's ruling in United States v. Booker, 543 U.S. _____ (2005) and United States v. Fanfan, 543 U.S. ____ (2005) the Court is no longer bound by the Sentencing Guidelines. The function of the Guidelines is no longer of a mandatory nature, but rather they are now advisory for the Court to consider at its discretion. The Court is free to consider any and all relevant circumstances to the matter before the Court in determining what sentence would be appropriate.

Mr. Saleh respectfully submits to this Honorable Court that if ever there was a time to take the guidelines as advisory and impose a sentence outside the otherwise advisory guidelines, this is it. The Court has already in earlier

**¶ 62 of the Pre-Sentence Report**

Mr. Saleh only has one son, that which is the result of his marriage to Fatimah who is now approximately 18 months old. He has no other children. The PSR at paragraph 62 states that Mr. Saleh's half-brother and sister have told probation that Mr. Saleh has two children 10 and 3 years of age. This is not true. Notably, these siblings have not had very frequent contact with Mr. Saleh and it is clear from the Criminal History section of the PSR (although it is embarrassing for Mr. Saleh to use the Criminal History section to make this point) that 10 years ago he was getting into trouble with the law and was incarcerated, the incarceration that ultimately lead to his deportation he was not in Yemen with a wife and children as his siblings state. The PSR should therefore be corrected.

## II.   Sentencing Memorandum

Mr. Saleh believes that this Honorable Court is aware of the facts surrounding this indictment as before coming to the point of sentencing, this case has been heavily litigated.

The facts surrounding this case are very sad to say the least. Mr. Saleh came to the United States as a young boy of 11 years of age to join his family here in the United States. His family, economically was not doing too well, he got the basic necessities of life but nothing more, not to suggest that this was not something that he should have been greatly for as so many people go without even that. However, in the early years of his youth he made some wrong decision, hang around with the wrong crowd. For this he is very remorseful and if he ever got the opportunity to do things over again he would do them differently. Now Mr. Saleh stands to lose the thing most precious to him, his 18 month old son who he has never seen.

On January 20, 1998, owing to the wrong decisions and choices Mr. Saleh made in the early adulthood, he was deported from the United States to Yemen, a country which was alien to him at that time as home for him was the United States not Yemen.

Missing home, he re-entered the United States in 2002, in interest of bravery Counsel will not state all of the facts pertinent to Mr. Saleh's return to the United States in 2002 as this matter has previously been addressed in the Motion to dismiss the indictment. However, Counsel will mention that, Mr. Saleh having entered in 2002, moved to the Bronx, met and married his wife Fatimah, the union produced a child, a son, who was born while Mr. Saleh was out of the country in June of 2004 and whom he has not seen till this day.

Mr. Saleh thought all was well and his life is finally taken a turn for a better future ahead of him, a future which involved his wife, child and him being

# SAGHIR LLC

730 5th Avenue
9th Floor
New York, NY 10019
Tel: 212 659 7786    Fax: 718 375 9394

Uzmah Saghir, Esq.                                                                                   uzmahuk@hotmail.com

December 2, 2005

Honorable Raymond J. Dearie
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE: **United States v. Ali Rosen Saleh**
    **Docket No.: 04-CR-823(RJD)**

Dear Judge Dearie,

Mr. Saleh will be standing before this Honorable Court for sentencing on December 16, 2005 at 3pm. He submits this sentencing memorandum and objections to the pre-sentencing report through the undersigned. We make the objections to the pre-sentence report for purpose of providing a complete picture of the facts.

## I.    Objections to the Pre-Sentence Report

### ¶ 51 and 52 of the Pre-Sentence Report

The arrest indicted in these paragraphs was the result of a mistaken identity, Mr. Saleh's cousin got into a fight and the police arrested him by mistake, the matter was dismissed the report should be corrected to reflect the same.

### ¶ 61 of the Pre-Sentence Report

The probation department states that it has requested verification of Mr. Saleh's and Fatimah's marriage and is awaiting response from the Office of the City Clerk. However, Mr. Saleh will like to inform the probation office and the Honorable Court that, Mr. Saleh's marriage to Fatimah was a religious marriage; they never formally or legally registered their marriage. Friends were witnesses to the marriage.