

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

GSG
F.#2004R00653

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address*: *156 Pierrepont Street*
*Brooklyn, New York 11201*

December 5, 2005

By Hand Delivery and ECF

Hon. Raymond J. Dearie
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Ali Rosan Saleh
>      Criminal Docket No. 04-823 (RJD)

Dear Judge Dearie:

The above-referenced defendant is scheduled to be sentenced by the Court on December 16, 2005.  In a letter dated December 2, 2005, the defendant moves the Court to impose a non-Guidelines sentence.  (See Def. Let. at 3-4).  It appears that this request is based on the history and characteristics of the defendant, which, according to the defendant, warrant a sentence of time served.  (See id.).  For the reasons set forth below, the government requests that the Court impose a sentence within the applicable, advisory Guidelines range of 46 and 57 months outlined in the Pre-Sentence Investigation Report ("PSR").

I.   STATEMENT OF FACTS

On August 28, 2004, the defendant, a citizen of Yemen, was arrested attempting to reenter the United States illegally after having been deported following the commission of an aggravated felony.  At the time, the defendant was arriving at John F. Kennedy International ("JFK") Airport aboard Virgin Atlantic Airlines flight number 009 from Sanaa, Yemen via London, England.  Thereafter, on September 13, 2004, the defendant was indicted and charged with illegal reentry following his prior deportation, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2).  On August 15, 2005, the defendant plead guilty to the indictment pursuant to a written plea agreement.

A. <u>The Defendant's Initial Presence in the United States</u>

The defendant first entered the United States on or about November 23, 1983 as a legal permanent resident. Since that time, however, the defendant has been convicted of a number of crimes in this country, including theft, battery, and, most significantly, the criminal sale of a controlled substance, the aggravated felony that ultimately led to the defendant's removal from the United States.

B. <u>The Defendant's Criminal Record</u>

1. In November 1991, the defendant was convicted of misdemeanor theft in San Francisco, California for which he was sentenced to thirty-six months probation and two days in jail. (<u>See</u> PSR ¶¶ 18-19).

2. In May 1992, in Santa Rosa, California, the defendant was convicted of misdemeanor battery and sentenced to two years probation and required to participate in a work program. (<u>See</u> PSR ¶¶ 22-23).

3. In June 1992, the defendant was convicted in San Francisco, California of drawing or exhibiting an imitation firearm. He was sentenced to three years probation, ninety days in jail, and a twelve month suspended sentence. (<u>See</u> PSR ¶¶ 20-21).

4. In October 1992, the defendant was convicted in San Francisco, California of the sale or transportation of marijuana, in violation of Section 11360(a) of the California Health and Safety Code, a felony. He was sentenced to three years probation and forty-three days in jail for this offense. (<u>See</u> PSR ¶¶ 24-25).

5. In approximately October 1993, the defendant was convicted in San Francisco, California of the criminal sale of a controlled substance, in violation of Section 11352 of the California Health and Safety Code, an aggravated felony. He was sentenced to one year in prison and three years probation for this offense. (<u>See</u> PSR ¶¶ 26-27).

2

      6.    In August 1994, the defendant was convicted in San Francisco, California of battery on a person. He was sentenced to thirty days in custody and three years probation for this offense. (See PSR ¶¶ 28-29).

      7.    On August 27, 1995, the defendant was once again arrested on drug charges and his term of probation in connection with his October 1993 conviction was revoked. He was subsequently sentenced to thirty-six months imprisonment. (See PSR ¶¶ 26-27).

Given the defendant's lengthy criminal history, the Probation Department has determined that the above convictions result in 4 points and correspond to criminal history category III. It should be noted, however, that the convictions detailed in paragraphs I(B)(1)-(4), supra, do not result in any criminal history points given their remoteness in time.

    C.    <u>The Deportation Proceedings and Deportation Order</u>

On September 25, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging that the defendant was subject to deportation to Yemen because of his October 1993 conviction for criminal sale of a controlled substance, an aggravated felony. Deportation hearings against the defendant commenced on December 9, 1996 before Immigration Law Judge ("IJ") Dean Levay in Elroy, Arizona, and continued on January 13, 1997 and March 20, 1997. The defendant appeared pro se at the deportation proceedings.

On March 20, 1997, the IJ ultimately ordered the defendant's removal to Yemen, finding that the defendant was not entitled to relief pursuant to Section 212(c) of the Immigration and Nationality Act of 1952. The IJ informed the defendant that prior to 1996, he had the discretion to waive deportation for individuals convicted of crimes. In 1996, however, Congress amended the immigration laws through passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). According to the IJ, based on these 1996 statutory amendments, individuals convicted of aggravated felonies, such as the defendant, were no longer eligible for 212(c) relief.

      D.    The Defendant's Appeal to the
           Board of Immigration Appeals

Thereafter, the defendant, represented by counsel, appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On October 31, 1997, however, the BIA dismissed the defendant's appeal, finding, inter alia, that the defendant was "statutorily ineligible" for Section 212(c) relief under AEDPA. The IJ's deportation order, therefore, became final on October 31, 1997 with the dismissal of the defendant's appeal.

      E.    The Defendant's Deportation to Yemen

On January 13, 1998, the INS issued a "Warrant of Deportation," authorizing any INS officer to take the defendant into custody and remove him from the country. On January 20, 1998, well over two months after the IJ's deportation order became final, the defendant was deported to Yemen. At the time, he was also presented with INS Form I-294, notifying him that he was prohibited from re-entering the United States and that re-entry or attempted re-entry within 20 years without the Attorney General's consent would subject the defendant to a felony prosecution.

      F.    The Defendant's Illegal Presence in the United States

As detailed above, the defendant was arrested while unlawfully attempting to reenter the United States at JFK Airport on August 28, 2004. As noted in the PSR, however, this was not the first time the defendant attempted to reenter the United States unlawfully following his deportation to Yemen. As admitted by the defendant to the Probation Department and indicated in his sentencing submission, he was successful in unlawfully reentering the United States at some point in 2002; he then remained in the United States until March 23, 2004, when he returned to Yemen. (See PSR ¶ 59; Def. Let at 3).[1]

---

[1]     The government takes strong objection to the defendant's characterization that "[h]e lawfully entered the United States in 2002." (Def. Let at 3). The defendant's reentry to the United States in 2002 was no more lawful than the illegal reentry for which he plead guilty before Your Honor. At no time did the defendant have the express permission to reenter the United States following his deportation to Yemen.

4

    G.    The Defendant's Collateral Attack on the <u>Underlying Deportation Proceedings</u>

On November 9, 2004, the defendant moved, based in large part on the Supreme Court's decision in <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001), to dismiss the indictment in this case, arguing that a defect in his underlying deportation proceedings rendered his removal illegal.  Specifically, the defendant argued that he was improperly denied the opportunity to seek 212(c) relief.  On February 16, 2005, the Court initially denied the defendant's motion to dismiss based on <u>St. Cyr</u>; thereafter, the defendant moved for reconsideration.  On July 29, 2005, the Court denied the defendant's motion for reconsideration of the same.  Thereafter, on August 15, 2005, the defendant plead guilty to the indictment pursuant to a written plea agreement.

II.    <u>ARGUMENT</u>

In essence, the defendant requests a non-Guideline sentence of time-served based his history and characteristics.  (<u>See</u> Def. Let. at 3-4).  For the reasons set forth below, a Guidelines sentence here is reasonable and the defendant's motion should be denied.

    A.    <u>A Guidelines Sentence Is Presumptively Reasonable</u>

Interpreting the Supreme Court's decision in <u>United States v. Booker</u>, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)."  <u>United States v. Crosby</u>, 397 F.3d 103, 111 (2d Cir. 2005).  Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum."  <u>Id</u>. at 113.

Since the Supreme Court's decision in <u>Booker</u>, one district court has concluded that "considerable weight should be given to the Guidelines in determining what sentence to impose" in light of the similarity between the sentencing factors that must be taken into account under § 3553(a) and the goals the Sentencing Commission has endeavored to achieve through the Guidelines.  <u>United States v. Wilson</u>, 350 F. Supp. 2d 910 (D. Utah 2005).  Indeed, because "the Sentencing Commission has

5

promulgated and honed the Guidelines to achieve these congressional purposes" over the last 16 years, courts should "only depart from th[e] Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912.

The inherent reasonableness of a Guidelines sentence is further underscored by the fact that the Sentencing Commission initially formulated the Guidelines by canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements, at 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed in . . . categories of cases prior to the creation of the Commission"). Subsequent to the adoption of the Guidelines, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 125 S. Ct. 738, 766 (2005). A sentence within the Guidelines range thus reflects the federal courts' collective sentencing expertise accumulated over the past two decades and is not "unreasonable."

To be sure, as the district court noted in Wilson, "reasonable minds may differ about whether the Guidelines are the best standard against which to measure the fairness of sentences," and certain individuals have concluded that Guidelines sentences are too harsh. Wilson, 350 F.Supp.2d at 924. However,

> the fundamental fact remains . . . that the Guidelines are the only standard available to all judges around the country today. For that reason alone, the Guidelines should be followed in all but the most exceptional cases.

Id. at 925.

Because, as is explained below, the Guidelines take into account the defendant's circumstances, a Guidelines sentence is reasonable and appropriate in this case.

6

    B.    The Defendant's History and Characteristics
          <u>Do Not Warrant a Non-Guidelines Sentence</u>

       The defendant's request for a non-Guidelines sentence is premised on the fact that following his long history of criminal convictions and ultimate deportation to Yemen, he has lived a law-abiding life. (<u>See</u> Def. Let. at 3-4). For example, according to the defendant, during this time, he married a woman in New York City, had a child with her, and refrained from further criminal activity. (<u>See</u> <u>id</u>.). The defendant contends that these facts warrant a non-Guidelines sentence of time-served. There are a number of a problems, however, with the defendant's argument.

       First, the defendant's argument completely overlooks the fact that the new, law-abiding life that he apparently started since his deportation included his illegal reentry into the United States in 2002 – a crime for which he escaped detection and prosecution. While the defendant casts this as a "lawful" entry, he had no more permission to reenter the United States in 2002, than he did in August 2004 when he was arrested at JFK Airport for the instant offense. In both cases, he lacked the express permission of the Attorney General of the United States to reenter the United States.

       Second, there is nothing unique about the defendant's conduct and life since his deportation that takes his case out of the heartland of such cases, warranting what would amount to a downward departure under the old Guidelines range. For instance, the defendant would be hard-pressed to cast his argument as a departure motion based on family circumstances, not only because he has no contact with his alleged wife and son, <u>see</u> PSR ¶ 61, but also because much of his family history is uncorroborated and inconsistent, <u>see</u>, <u>e.g.</u>, PSR ¶ 61 ("It is noted that the defendant's mother, half-sister and half-brother knew nothing of this marriage or child); PSR ¶ 62 ("[The defendant's half-brother] reported that the defendant has a wife and two children in Yemen; a daughter (approximate age 10) and a son (age 3)); and PSR ¶ 64 ("[The defendant's half-sister] reported that the defendant has two children in Yemen, but that she is unaware of his marital status.")).

       Finally, even if the Court is inclined to credit the defendant's argument, the defendant's lack of contact with the criminal justice system from the time he was deported until he was arrested for the instant offense – a period of over six years – is greatly outweighed by his lengthy criminal record which is detailed above. It is this extensive criminal record, particularly the defendant's October 1993 drug conviction, which drives the defendant's advisory Guidelines range, both with

respect to his base offense level and to his criminal history category.  Indeed, the defendant's criminal history category does not even include four convictions for crimes ranging from theft and battery to the sale of narcotics.  As such the defendant's criminal history may present a case in which it under represents both its seriousness as well as the likelihood that the defendant will commit further crimes.

Under the circumstances, a Guidelines sentence would be appropriate and reasonable.  Further, a Guidelines sentence would adequately take into consideration not only the history and personal characteristics of the defendant as required by 18 U.S.C. § 3553(a)(1), but also the need for the sentence imposed by the Court to afford adequate deterrence to criminal conduct as required by 18 U.S.C. § 3553(a)(2)(B).  Significantly, with respect to the latter consideration, the defendant's extensive criminal history and the fact that the defendant returned to the United States not once, but twice, following his deportation are both important factors for the Court to consider in imposing sentence.

III. CONCLUSION

For the foregoing reasons, the Court should impose a Guidelines sentence.

```
                              Respectfully submitted,

                              ROSLYNN R. MAUSKOPF
                              United States Attorney


                        By:   /s/Gurbir S. Grewal
                              Gurbir S. Grewal
                              Assistant U.S. Attorney
                              (718) 254-6296
```

cc: Uzmah Saghir, Esq. (by ECF and Fax)
    Shannon T. Smith, USPO (by Hand)